IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | | |
|---|---|---|
| Edward B. Mitchell, | ) | |
| | ) | C/A No. 2:11-2028-RMG |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **ORDER** |
| Medical University Hospital Authority, | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

This matter is before the Court on the Report and Recommendation ("R&R") of the Magistrate Judge that this Court grant Defendant's motion for summary judgment. (Dkt. No. 71). As set forth below, the Court adopts the R&R in part and grants in part and denies in part Defendant's motion for summary judgment. (Dkt. No. 55).

**Background**

Plaintiff, Edward B. Mitchell ("Plaintiff"), filed this civil action against his former employer, Medical University Hospital Authority ("Defendant"), asserting various claims for discrimination in his employment. Specifically, Plaintiff asserts claims for: 1) race discrimination under Title VII; 2) sex discrimination under Title VII; 3) race discrimination and retaliation pursuant to 42 U.S.C. § 1983; 4) retaliation under Title VII; 5) age discrimination pursuant to the Age Discrimination in Employment Act; and 6) violation of the Family and Medical Leave Act. (Dkt. No. 1). On January 22, 2013, Defendant filed a motion for summary judgment regarding all of Plaintiff's claims. (Dkt. No. 55). On March 8, 2013, Plaintiff filed a response in opposition to the motion. (Dkt. No. 60). The Magistrate Judge then issued an R&R recommending this Court grant Defendant's motion for summary judgment. (Dkt. No. 71).

Plaintiff then filed timely objections to the R&R, (Dkt. No. 75), and Defendant filed a reply, (Dkt. No. 76).

## Legal Standard

The Magistrate Judge makes only a recommendation to this Court. The recommendation has no presumptive weight, and the responsibility for making a final determination remains with this Court. *Mathews v. Weber*, 423 U.S. 261, 270-71 (1976). This Court is charged with making a de novo determination of those portions of the R&R to which specific objection is made. Additionally, the Court may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1). This Court may also "receive further evidence or recommit the matter to the magistrate judge with instructions." *Id.*

Summary judgment is appropriate if a party "shows that there is no genuine dispute as to any material fact" and that the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In other words, summary judgment should be granted "only when it is clear that there is no dispute concerning either the facts of the controversy or the inferences to be drawn from those facts." *Pulliam Inv. Co. v. Cameo Props.*, 810 F.2d 1282, 1286 (4th Cir. 1987). "In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party." *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996). The party seeking summary judgment shoulders the initial burden of demonstrating to the court that there is no genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Once the moving party has made this threshold demonstration, the non-moving party, to survive the motion for summary judgment, may not rest on the allegations averred in his pleadings. *Id.* at 324. Rather, the non-moving party must demonstrate that specific, material

2

facts exist that give rise to a genuine issue. *Id.* Under this standard, "[c]onclusory or speculative allegations do not suffice, nor does a 'mere scintilla of evidence'" in support of the non-moving party's case. *Thompson v. Potomac Elec. Power Co.*, 312 F.3d 645, 649 (4th Cir. 2002) (quoting *Phillips v. CSX Transp., Inc.*, 190 F.3d 285, 287 (4th Cir. 1999)).

## Discussion

In his R&R, the Magistrate Judge first recommended this Court grant summary judgment as to all Plaintiff's claims except for race discrimination and retaliation under Title VII because these were the only two claims which Plaintiff addressed in his response in opposition to Defendant's motion for summary judgment. (Dkt. No. 71 at 10-11). Plaintiff has filed no objection to this recommendation, again focusing solely on these two claims. (Dkt. No. 75). The Court finds no clear error in this recommendation of the Magistrate Judge and it is therefore adopted as the order of the Court. *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 315 (4th Cir. 2005).

## I.    Race Discrimination

As stated above, Plaintiff focuses his objections solely on his Title VII claims for race discrimination and retaliation. (Dkt. No. 75). Plaintiff urges that he is pursuing his claim for disparate treatment on account of his race pursuant to the "mixed motive" framework. (Dkt. No. 75 at 1). Under this framework, a plaintiff must either present "direct or circumstantial evidence that raises a genuine issue of material fact as to whether an impermissible factor such as race [was a motivating factor in the] employer's adverse employment decision." *Diamond v. Colonial Life & Accident Ins. Co.*, 416 F.3d 310, 318 (4th Cir. 2005). Plaintiff, an African-American man, argues that a genuine issue of fact is created by comparing how Defendant treated him to how Defendant treated a white co-worker, Alan Lopez. The Court agrees.

3

A brief summary of Plaintiff's and Mr. Lopez's respective employment histories during the relevant period is helpful here. Defendant hired Plaintiff, an African-American man, as a temporary Registered Nurse (R.N.II) on its Neurology/Neurosurgery floor in December 2007. In March 2008, Ramona Smith, a white woman, became Plaintiff's direct supervisor. In April 2008, Plaintiff applied for and received a permanent position with Defendant and Smith supported his application.

On February 4, 2009, Plaintiff met with Darby, Smith's supervisor, to complain that his patient files were being audited. At this meeting he asked Darby for a transfer. The transfer request was denied.

On April 17, 2009, Darby held a meeting with Plaintiff and Tom Brown, Defendant's controlled substance investigator. Brown recounted that Smith sent him a report that there was a discrepancy in oxycodone drug count, and that there was a concern that Plaintiff may be responsible for diverting drugs. Brown said he reviewed the records of other nurses, but only found problems with Plaintiff's records. Plaintiff denied responsibility and consented to a drug test. At the meeting, Plaintiff asserted these accusations were in retaliation for his request for a transfer and were on account of his race. Plaintiff was suspended for two days while Defendant processed his drug test. The test was negative and Plaintiff returned to work on April 23, 2009.

When he returned to work on April 23, Plaintiff received a letter detailing Brown's investigation and listing nine incidents of missing medication and/or improper administering of medications. Plaintiff also received on oral reprimand for an incident of insubordination and inappropriate behavior which occurred on April 3, 2009, as well as a counseling session for eighteen incidents of tardiness and three missed time-clock punches dating back to September 8, 2008.

4

The next day, April 24, 2009, Plaintiff took FMLA leave. While still out on leave, Plaintiff sent Smith a letter of resignation dated June 10, 2009, with an effective date of July 1, 2009. Plaintiff then returned to work on June 13, 2009. By letter dated June 18, 2009, Smith accepted Plaintiff's resignation and stated that she could not recommend him for employment in the future due to his identified performance issues. By letter dated June 17, 2009, Plaintiff attempted to rescind his resignation. Smith responded with a letter on June 22, 2009, stating that his resignation was already accepted and that his last day of work would be June 28, 2009.

Defendant hired Alan Lopez in September 2008 as a Registered Nurse (R.N.I). At this time, Lopez did not work in the same department as Plaintiff. On May 21, 2009, Lopez was involved in a serious patient care incident resulting in a patient's death which caused Defendant to remove him from patient care and return him to orientation. On June 7, 2009, Defendant transferred Lopez to Plaintiff's department where he too was supervised by Smith. On August 23, 2009, Smith gave Lopez a written reprimand for his work performance and critical thinking skills. Following this reprimand, Lopez was involved in two other work incidents in which he transferred a cardiac patient to higher level of care without an IV and another in which an identified fall-risk patient fell without the proper protocols being put in place. As a result, Smith terminated Lopez on September 10, 2009. However, Lopez was subsequently rehired in a different department on or about September 24, 2009, by either Martha Hooper or Karen Weaver.

In his R&R, the Magistrate Judge determined that Plaintiff had not created a genuine issue of fact regarding his claim for race discrimination in part because his purported comparator, Lopez, was not sufficiently similar to him. (Dkt. No. 71 at 22). The Magistrate Judge noted that Lopez had far fewer employment incidents and took responsibility for each

incident. In contrast, the Plaintiff had nine incidents involving missing medications for which he received a three day suspension and denied responsibility, he was counseled for his attendance issues, and he received an oral reprimand for one event of insubordination. (*Id.* at 22-23). Thus, Plaintiff failed to produce sufficient circumstantial evidence of discrimination to survive summary judgment.

In his objections, Plaintiff argues that although Lopez's record contains fewer incidents, the Magistrate Judge ignored the significance and severity of his mistakes. Specifically, Plaintiff notes that Lopez's May 2009 incident resulted in the death of a patient, while Plaintiff's mistakes were only "administrative" in nature. Thus, Plaintiff argues that Lopez is a proper comparator because Lopez's mistakes were in fact more serious than his.

Although the comparison is not a perfect one because Plaintiff and Lopez were found to have violated different policies, they are not so different as to render the comparison "effectively useless." *Humphries v. CBOCS West, Inc.*, 474 F.3d 387, 405 (7th Cir. 2007). They both performed similar jobs, at the same time, and under the same supervisor. Smith found both of them deficient in performing the duties assigned to them, although the nature of their infractions differed somewhat. The Court is persuaded that Lopez, although not identical, is sufficiently similar to Plaintiff to act as a suitable comparator in establishing circumstantial proof of discrimination.

Plaintiff next asserts that despite their similar performances, Defendant treated Lopez better than him. The record discloses very similar treatment. Smith, reacting to the problems presented by both men, ultimately decided to remove them from the Neurology/Neurosurgery floor where she was the supervisor. However, the record shows that Smith determined that she would not recommend Plaintiff for reemployment with Defendant. In contrast, Lopez was

6

rehired by Defendant in another department almost immediately after leaving Smith's supervision, allowing the inference that she did not make a similar recommendation regarding Lopez. Thus, Plaintiff was treated more severely in this respect.

Proceeding under the mixed-motive framework, as Plaintiff has clearly requested, the ultimate question for the Court is whether Plaintiff has "marshaled sufficient evidence for a reasonable jury to find that the [Defendant's] action against him was at least in part motivated by [racial] bias." *Croft v. City of Roanoke*, 862 F. Supp. 2d 487, 494 (W.D. Va. 2012). Under the unique set of facts presented by this case, the Court finds that he has. Taken in a light most favorable to him, Plaintiff has presented evidence that although Lopez's performance as a nurse was inferior to his, that Smith allowed Lopez to be rehired while denying Plaintiff this opportunity. Drawing all inferences in his favor, the Court finds that a reasonable jury could find that this unequal treatment was motivated, at least in part, by Plaintiff's race.

## II.    Retaliation

To establish a prima facie case of retaliation, a plaintiff must show "(1) engagement in a protected activity; (2) adverse employment action; and (3) a causal link between the protected activity and the employment action." *Coleman v. Md. Ct. of App.*, 626 F.3d 187, 190 (4th Cir. 2010). Once a plaintiff establishes a prima facie case, the burden shifts back to the employer to proffer a legitimate, non-discriminatory reason for taking the adverse action. If the employer carries its burden, the plaintiff must prove that the legitimate reasons were pretextual. *Matavia v. Bald Head Island Mgmt., Inc.*, 259 F.3d 261 (4th Cir. 2001).

In the present case, the Magistrate Judge determined that Plaintiff established a prima facie case of retaliation, but that he failed to establish Defendant's legitimate non-discriminatory reasons were pretext. Plaintiff again objects that the Magistrate Judge drew the wrong inferences

from the facts in reaching his conclusion and that there is sufficient evidence of pretext to survive summary judgment.

For much the same reasons as discussed above, the Court finds that a genuine issue of fact exists regarding pretext. As previously stated, Smith decided not to recommend Plaintiff for reemployment while allowing another former employee, Lopez, to be rehired. In her letter to Mitchell she stated it is "standard practice" not to recommend for future employment those employees with "identified performance deficiencies." (Dkt. No. 55-21). Thus, Defendant's legitimate non-discriminatory reason for Smith's refusal to recommend Plaintiff for rehire was because it was Defendant's policy to do so. (Dkt. No. 55-36). On this record, there is an issue of fact whether Smith properly applied this policy to Plaintiff and whether it was equally applied as to Lopez. *See Mumford v. CSX Transp.*, 878 F. Supp. 827, 832 (M.D.N.C. 1994) (reasonable jury could find pretext for retaliation where employee was treated differently than employees who engaged in similar policy violations). Thus, the Court finds there is an issue of fact regarding pretext and therefore denies summary judgment as to Plaintiff's claim for retaliation.

## Conclusion

For the reasons set forth above, the Court adopts the R&R in part and GRANTS in part and DENIES in part Defendant's motion for summary judgment. Specifically, the Court GRANTS Defendant's motion as to Plaintiff's claims for: 1) sex discrimination under Title VII; 2) race discrimination and retaliation pursuant to 42 U.S.C. § 1983; 3) age discrimination pursuant to the Age Discrimination in Employment Act; and 4) violation of the Family and Medical Leave Act. The Court DENIES Defendant's motion as to: 1) race discrimination under Title VII; and 2) retaliation under Title VII.

**AND IT IS SO ORDERED.**

Richard Mark Gergel
United States District Court Judge

August ___, 2013
Charleston, South Carolina